UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PETER S. HERRICK'S CUSTOMS AND
INTERNATIONAL TRADE
NEWSLETTER,

    Plaintiff,

    v.

U.S. CUSTOMS AND BORDER
PROTECTION,

    Defendant.

Civil Action No.  04-0377  (JDB)

## MEMORANDUM OPINION

Plaintiff Peter S. Herrick's Customs & International Trade Newsletter ("Herrick's" or "plaintiff") filed this Freedom of Information Act ("FOIA") suit when defendant U.S. Customs & Border Protection Bureau ("Customs" or "defendant") refused to provide it with a copy of the handbook that it had requested.  Customs eventually turned over portions of the requested materials, but withheld other portions on the ground that they were exempt from disclosure under FOIA.  This Court upheld in large part Customs' decision to refuse disclosure, ordering Customs to disclose only a "limited" amount of information that had apparently been "lumped in with exempt material."  Peter S. Herrick's Customs & Int'l Trade Newsletter v. U.S. Customs & Border Protection, Civ.A. No. 04-0377, 2006 WL 1826185, at *10 & n.10 (D.D.C. June 30, 2006) ("Herrick's II").  Plaintiff now moves for an award of $58, 655.88 in attorney's fees.  For the reasons discussed below, plaintiff's motion will be denied.

1

## BACKGROUND

The factual and procedural background of this case is set forth in the Court's two previous opinions, see Herrick's II, 2006 WL 1826185, at *1-*2; Peter S. Herrick's Customs & Int'l Trade Newsletter v. U.S. Customs & Border Protection, Civ.A. No. 04-0377, 2005 WL 3274073, at *1 (D.D.C. Sept. 22, 2005) ("Herrick's I"), and will be repeated here only to the extent necessary to resolve the attorney's fees request.  In its original complaint, Herrick's sought an injunction requiring Customs to release the Seized Asset Management Enforcement Procedures Handbook ("SAMEPH"), which Customs had identified as the equivalent of the "Fines, Penalties & Forfeitures Handbook" previously requested by Herrick's.  Compl. at 2-3.  Although initially withholding the entire contents of SAMEPH, Customs soon released to Herrick's ninety-three pages of the handbook in their entirety and 180 pages with partial redactions, but continued to withhold the final seventy-eight of the 351 total pages.  Herrick's II, 2006 WL 1826185, at *1.  Herrick's then filed an amended complaint in which it alleged that the remaining portions of SAMEPH were improperly withheld and requested their release.  Am. Compl. at 3.

Both parties eventually moved for summary judgment.  Faced with those cross-motions, the Court determined that the Vaughn index submitted by Customs was not specific enough and ordered Customs to submit a new Vaughn index in support of its contention that the undisclosed materials had been properly withheld under FOIA's exemptions.  Herrick's II, 2006 WL 1826185, at *1; Herrick's I, 2005 WL 3274073, at *4.  Customs complied with the Court's order by submitting a new Vaughn index, a declaration from a knowledgeable agency official, and a copy of the redacted version of the SAMEPH that plaintiff had received.  Herrick's II, 2006 WL 1826185, at *1.  Because Customs' expanded submissions and the parties' memoranda still did

not enable the Court to resolve the dispositive motions, the Court ordered Customs to submit for in camera review an unredacted version of the SAMEPH.  See Peter S. Herrick's Customs & Int'l Trade Newsletter v. U.S. Customs & Border Protection, Civ.A. No. 04-0377 (D.D.C. Apr. 27, 2006) (Order).

After conducting the in camera review, the Court granted in part and denied in part the cross-motions for summary judgment.  Herrick's II, 2006 WL 1826185, at *2.  Specifically, the Court upheld almost entirely Customs' determination that the redacted and withheld portions of the SAMEPH were exempt from disclosure under Exemptions 2, 7(E), and 7(F) of FOIA.  Id. at *4-*9.  The Court did, however, identify "mistakes" in what it described as Customs' "line-by-line, good-faith effort to excise and disclose all non-exempt portions of the SAMEPH in response to the Court's earlier directive."  Id. at *10.  Furthermore, "[a]lthough the mistakes [were] relatively few in number and not necessarily responsive to plaintiff's objectives, they do concern the type of material that FOIA seeks to make public -- specifically, references and citations to statutory authority, as well as non-analytical synopses of what the law requires."  Id.  The Court identified these non-exempt portions of the SAMEPH in a footnote, id. at *10 n.10, and ordered Customs to disclose only those portions - - approximately thirty sentences scattered between pages 66 and 193 of the SAMEPH.  Id.; Pl.'s Motion, Exh. C at 3-4 (8/1/2006 Disclosure Letter).

## DISCUSSION

Section 552(a)(4)(E) of FOIA provides that a court "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed."  5 U.S.C. § 552(a)(4)(E) (emphasis

added). A party seeking a fee award must make two showings. See Davy v. Cent. Intelligence Agency, 456 F.3d 162, 166 (D.C. Cir. 2006). First, the party must show that it is "eligible" for a fee award in that it "substantially prevailed" in the litigation. Id.; Weisberg v. U.S. Dep't of Justice, 848 F.2d 1265, 1268 (D.C. Cir. 1988). Once that showing has been made, the party must demonstrate

> that it is entitled to fees under four criteria that the court weighs in determining whether attorney's fees are appropriate: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) whether the Government had a reasonable basis for withholding requested information."

Burka v. U.S. Dep't of Health and Human Servs., 142 F.3d 1286, 1288 (D.C. Cir. 1998) (citation and quotation marks omitted). "The sifting of those criteria over the facts of a case is a matter of district court discretion" that the appellate court reviews under the abuse-of-discretion standard. Tax Analysts v. U.S. Dep't of Justice, 965 F.2d 1092, 1094 (D.C. Cir. 1992). Moreover, the "legislative history of section 552(a)(4)(E) evinces a clear congressional intent to leave the courts' broad discretion when considering a request for attorney fees," such that there is no "presumption in favor of awarding attorney fees" to prevailing FOIA litigants. See Nationwide Bldg. Maintenance, Inc. v. Sampson, 559 F.2d 704, 713-14 (D.C. Cir. 1977); Cuneo v. Rumsfeld, 553 F.2d 1360, 1367 (D.C. Cir. 1977) ("It is clear from the legislative history that Congress did not intend the award of attorney fees to be automatic."). With these principles in mind, the Court will address in sequence plaintiff's eligibility for and entitlement to an award of fees.

**A. Eligibility**

Herrick's is eligible for an award of attorney's fees if it "substantially prevailed" in the FOIA litigation. 5 U.S.C. § 552(a)(4)(E); Tax Analysts, 965 F.2d at 1093. Prior to the Supreme

Court's decision in Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res., 532 U.S. 598, 603 (2001), the D.C. Circuit had recognized the "catalyst theory," under which a FOIA plaintiff could show that it had substantially prevailed by demonstrating that "the 'litigation substantially caused the requested records to be released.'" Oil, Chemical and Atomic Workers Int'l Union v. Dept. of Energy, 288 F.3d 452, 455-56 (D.C. Cir. 2002) ("OCAW") (quoting Chesapeake Bay Found., Inc. v. Dep't of Agric., 11 F.3d 211, 216 (D.C. Cir. 1993)). But the OCAW court, noting that the Supreme Court had definitively rejected the catalyst theory in Buckhannon, applied the Court's analysis of the phrase "prevailing party" in the fee-shifting provision of the anti-discrimination statutes to the analogous language in FOIA's fee-shifting provision. Id. at 454-57. In the wake of Buckhannon and OCAW, "in order for plaintiffs in FOIA actions to become eligible for attorney's fees, they must have 'been awarded some relief by [a] court,' either in a judgment on the merits or in a court-ordered consent decree." Id. at 456-57 (quoting Buckhannon, 532 U.S. at 603). Accordingly, the Court must focus not on any information that Customs voluntarily disclosed after the filing of the complaint, but instead on the relief that the Court itself awarded. See Davis v. U.S. Dept. of Justice, 460 F.3d 92, 105-06 (D.C. Cir. 2006) (denying the fee request where the government's release of requested tapes "was not made pursuant to any judgment or [court] order").

Here, rather than disputing that Herrick's has met this threshold requirement, Customs argues that Herrick's is ineligible for an award of fees under the D.C. Circuit's decision in Burka, 142 F.3d at 1288-89, which held (1) that pro se attorneys are not eligible for attorney's fees under FOIA and also that (2) a pro se attorney's alleged representation of an "undisclosed client" does not preserve his or her eligibility. The basis for Customs' argument is that "counsel" for plaintiff

5

is also the principal of plaintiff - - Peter S. Herrick. Plaintiff's "interest and those of its counsel," as Customs sees it, "cannot be viewed as 'detached' for purposes of demonstrating an attorney-client relationship." Def.'s Opp'n at 6. Customs therefore insists that counsel for Herrick's, "in advancing his professional or business interest through the newsletter, is no more entitled to fees than a layperson representing his or her own interest." Id. Customs' argument has considerable force. However, accepting it would require the Court to extend the rule announced in Burka well beyond the circumstances of that case - - something that the D.C. Circuit has not yet seen fit to do. This case is also distinguishable from Burka on a basic level, insofar as plaintiff here did not formally proceed pro se; rather, counsel has openly represented an entity distinct from himself - - at least in the legal sense - - since the outset of the litigation. Given these distinctions and the Court's conclusion in Section B infra that plaintiff's request for attorney's fees should be denied on other grounds, the Court declines to break new ground by extending Burka to the circumstances of this case.

      Plaintiff's eligibility thus turns solely on whether it substantially prevailed in its FOIA request. This Court's decision in Herrick's II instructed Customs to release a small fraction of the information that Herrick's had sought first in making its FOIA request and later in filing an amended complaint. Specifically, Customs was required to release a number of sentences that contained "references and citations to statutory authority, as well as non-analytical synopses of what the law requires." Herrick's II, 2006 WL 1826185, at *10 & n.10. Although this relief was so minor as to fit into a single footnote on the final page of the opinion, it nonetheless suffices to show that Herrick's was "awarded some relief by [a] court," OCAW, 288 F.3d at 457 (quoting Buckhannon, 532 U.S. at 603), which is all that Herrick's must establish to qualify as having

"substantially prevailed" under FOIA.

**B.  Entitlement**

Having established its eligibility for an award of attorney's fees, Herrick's must also show that it "is 'entitled' to [such] an award." Tax Analysts, 965 F.2d at 1093 (citation omitted).  In making the entitlement determination, the Court will look to the four nonexhaustive factors articulated by the D.C. Circuit: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the government's decision to withhold the documents.  Id.; see also Nationwide Bldg. Maintenance, Inc., 559 F.2d at 714 (noting that no one factor should be given "dispositive weight," and instructing courts not "to frustrate [Congress's] intent by failing to search out and consider other factors that may be relevant to whether attorney fees should be awarded to a successful FOIA plaintiff").

1.  Public benefit

While "[t]he release of any government document benefits the public by increasing citizens' knowledge of their government," the D.C. Circuit has long recognized that "Congress did not have this sort of broadly defined benefit in mind" when it enacted the fee-shifting provision of FOIA.  Fenster v. Brown, 617 F.2d 740, 744 (D.C. Cir. 1979).  Instead, the public-benefit prong is aimed at determining whether "the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." Cotton v. Heyman, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (quoting Fenster, 617 F.3d at 744).  "The inquiry is furthered by considering the likely degree of dissemination and the public impact that can be expected from a particular disclosure." Horsehead Indus. v. U.S. Envtl. Prot. Agency, 999 F.

Supp. 59, 68 (D.D.C. 1998) (citation omitted).  In conducting this inquiry, courts should evaluate "the specific documents at issue in the case at hand."  See Cotton, 63 F.3d at 1120.

As an initial matter, then, the Court must identify "the specific documents at issue" in this case.  See id.  That task is all the more difficult because the parties offer starkly different versions of which documents figure into the public benefit analysis.  Plaintiff insists that the public benefit should be measured using not just the "limited" disclosures ordered in Herrick's II, but also (1) the sections of the SAMEPH disclosed by Customs since the initiation of this lawsuit[1] and (2) additional information that Customs disclosed when it filed an updated Vaughn index in accordance with the Court's decision in Herrick's I.  Pl.'s Reply at 1, 10, 11.  In contrast, Customs contends that the only portions of the SAMEPH relevant to the public-benefit analysis are those that were produced in response to a court ruling - - the scattered sentences that the Court identified in Herrick's II, 2006 WL 1826185, at *10 n.10, which comprise "a very small amount of information."  Def.'s Opp'n at 1; id. at 11 (describing the plaintiff's "degree of success" as "incredibly low").

Each party's position finds some support in the law.  Bolstering plaintiff's contention are pre-Buckhannon and pre-OCAW cases indicating that courts should consider the public benefit generated by the lawsuit as a whole.  See Chesapeake Bay Found. v. Dep't of Agric., 108 F.3d

---

[1] Plaintiff's various assertions as to the quantity of information that Customs voluntarily released are at odds with one another.  For example, Herrick's appears at times to claim that Customs released the entire 350 pages of the SAMEPH.  E.g., Pl.'s Reply at 9 ("As soon as [plaintiff] determines the best format for the approximately 350 pages now available to the public[.]"); id. at 10 ("The release of the 350 page SAMEPH is hardly de minimis.").  Elsewhere, however, Herrick's acknowledges the undisputed fact that the Court recited in both Herrick's I and Herrick's II: that seventy-eight pages were fully withheld, 180 pages were released with partial redactions, and ninety-three pages were released in their entirety.  See Pl.'s Motion at 6.  Neither before this Court's decisions nor since has Customs released the entire SAMEPH.

375, 377 (D.C. Cir. 1997) ("Although we have chosen different language to characterize [the public-benefit] inquiry, our recent decisions make clear that the court must consider 'the public benefit derived <u>from the case</u>,' i.e., the litigation.") (citations omitted); <u>Horsehead Indus.</u>, 999 F. Supp. at 68-69 ("[I]t is the benefit that derives from the litigation[,] not simply the [FOIA] request that is considered."). These statements coexisted comfortably with the then-governing catalyst theory, under which a party seeking attorney's fees had to show only that a causal nexus existed between the filing of the FOIA suit and the agency's surrender of the requested information. <u>See, e.g.</u>, <u>Weisberg</u>, 848 F.2d at 1268. There was thus a congruence between the disclosures caused by the FOIA suit and the documents released; in essence, all documents disclosed as a result of the litigation could be considered in determining <u>both</u> whether the litigant substantially prevailed and the public benefit of the disclosure.

But <u>Buckhannon</u> and <u>OCAW</u>, which did away with the catalyst theory, call into question the validity of the statements in these cases. After all, if the focus in deciding <u>whether</u> a FOIA litigant has substantially prevailed is restricted to the relief ordered by (or the alteration in the parties' legal relationship effectuated by) a court, <u>see, e.g.</u>, <u>Edmonds v. FBI</u>, 417 F.3d 1319, 1322-23 (D.C. Cir. 2005), the same focus would seem appropriate in determining <u>the extent</u> of the litigant's success. Put another way, if the congruence between the "substantially prevails" inquiry and the public-benefit analysis that existed prior to <u>Buckhannon</u> and <u>OCAW</u> is to be preserved, then the only documents considered in assessing the public benefit should be those ordered disclosed by a court. This logic supports Customs' position and suggests that the Court should consider only the public benefit from the limited disclosures ordered in <u>Herrick's II</u>, not the potential value of the disclosures that Customs voluntarily made, in deciding whether

plaintiff is entitled to fees.

Fortunately, the Court need not resolve this tension in the case law because, even considering all of the disclosures made during the course of this lawsuit,[2] the partial release of the SAMEPH confers no more than a modest public benefit. As mentioned above, the key question is whether the released sections of the SAMEPH are "likely to add to the fund of information that citizens may use in making vital political choices." Cotton, 63 F.3d at 1120 (citation omitted). Answering "yes," Herrick's makes two basic claims. As to the first - - that "the release of the SAMEPH will greatly assist the public in knowing Customs' procedures for seized assets and adds to the public's fund of knowledge," Pl.'s Motion at 8 - - plaintiff points to two pending cases in which counsel for plaintiff has used information gleaned from the SAMEPH to help his clients. Second, plaintiff submits that the existence of the SAMEPH, and how to access its contents, is of great interest to "the international trade community." Pl.'s Reply at 9. Both of these arguments, however, are undercut by the D.C. Circuit's decision in Fenster, 617 F.2d at 744, a controlling precedent to which the Court will return throughout this discussion.

The plaintiffs in Fenster, attorneys who specialized in government contract law, filed a

---

[2] Plaintiff's effort to include in the relevant disclosures some pieces of information that Customs allegedly released in submitting the revised Vaughn index and accompanying version of the SAMEPH raises the same concerns expressed above. Specifically, "requiring an agency to redo its Vaughn index is 'not the stuff of which legal victories are made,'" Campaign for Responsible Transplantation v. U.S. Food and Drug Admin., - - F. Supp. 2d - - , 2006 WL 2536466, at *5 (D.D.C. Sept. 5, 2006) (quoting Buckhannon, 532 U.S. at 604). An order requiring an agency to do only that, therefore, does not render a FOIA plaintiff eligible for a fee award. Hence, there is considerable question as to whether, in assessing the public benefit, the Court should consider additional information that Customs may have released when it submitted its revised Vaughn index and the redacted SAMEPH.

FOIA request seeking the release of "a manual used by the Defense Contract Audit Agency (DCAA) to aid inspectors who audit government contracts." Id. at 741. After protracted litigation, the government eventually released the manual. The district court, noting the small volume of public sales of the manual after its release, found the public benefit from the release of the manual to be "minimal" and denied the plaintiffs' request for attorney's fees. Id. at 743-44. On appeal, the D.C. Circuit affirmed both the order denying attorney's fees and the district court's public-benefit analysis. The court of appeals made two points of particular relevance to the plaintiff's arguments in this case. First, the court distinguished between the "broadly defined" public benefit inherent in "[t]he release of any government document" and the type of benefit with which FOIA was concerned - - namely, the disclosure of "information that citizens may use in making vital political choices." Id. at 744 (citation omitted). Second, the court explained that knowledge of the contents of the manual in the case before it "primarily helps government contractors with audits of their performance by the government. Thus, the manual basically furthers a private commercial, and not the general public, interest." Id. at 744-45.

      That analysis applies with equal force in this case. Plaintiff's contention that "the release of the SAMEPH will greatly assist the public in knowing Customs' procedures for seized assets" primarily implicates the public benefit inherent in "[t]he release of any government document." See 617 F.2d at 744 (emphasis added). But that type of benefit, as the Fenster court explained, was not the one that Congress sought to encourage in FOIA. Id. Moreover, plaintiff's emphasis on the value of the SAMEPH to clients of the law firm that publishes the newsletter and to "the international trade community" as a whole is directly analogous to the interests of the government contractors and their attorneys in Fenster, which the D.C. Circuit described as a

11

"private commercial" interest. Id. at 745. As the Fenster court made clear, disclosures whose primary effect is to further the commercial interests of a law firm and its clients are not the ones that Congress envisioned as benefitting the "general public." See id. Indeed, plaintiff has not identified how the "vital political choices" of ordinary citizens would be affected in the least by insight into the internal standards and procedures that Customs uses in seizing property and contraband, handling such property, and initiating specific types of legal actions. See Cotton, 63 F.3d at 1120. To the extent that this information is of any interest to the public, it is likely of interest to a relatively small segment of the population.[3] Accordingly, the Court concludes that the public benefit from the disclosures in this case is only slightly more than the "minimal" benefit identified by the district court, and upheld by the court of appeals, in rejecting the fee claim in Fenster. See 617 F.2d at 743.

    2.  Commercial benefit to the plaintiff / Nature of the plaintiff's interest

The second and third factors for the Court to consider, the commercial benefit to the plaintiff and the nature of the plaintiff's interests in the records requested, "are closely related and often analyzed together." Tax Analysts, 965 F.2d at 1095. Although not immune from criticism, see Burka, 142 F.3d at 1293-94 (Randolph, J., concurring), the rule in the D.C. Circuit has long been that "when a litigant seeks disclosure for a commercial benefit or out of other personal

---

[3] Nor is it clear that the disclosed information will easily reach most members of the general public. As Customs points out and plaintiff acknowledges, the CD-ROM currently available at the law firm's website is priced at $100. Def.'s Motion at 8; Pl.'s Reply at 8. Furthermore, the printed version of the partial SAMEPH will cost at least $35 to reproduce. See id., Herrick's Fifth Decl. ¶ 15. Plaintiff's protestations to the contrary notwithstanding, it is self-evident that these prices will limit the audience for the SAMEPH to those who already have an interest - - likely an economic interest - - in the materials. Hence, to the extent that the "likely degree of dissemination" affects the potential public benefit, see Horsehead Indus., 999 F. Supp. at 68, this consideration also weighs against a fee award.

motives, an award of attorney's fees is generally inappropriate." Tax Analysts, 965 F.2d at 1095 (citations omitted). Furthermore, to cut against an award of attorney's fees, the requesting party's "motive need not be strictly commercial; any private interest will do." Id. Recognizing these settled principles, the parties again present sharply contrasting views of plaintiff's interest in the SAMEPH. Customs insists that plaintiff sought the SAMEPH "to advance a commercial or/and professional interest," and did not file suit "merely to effect public dissemination of the information." Def.'s Opp'n at 9. Herrick's, on the other hand, places heavy emphasis on its status as a newsletter, invoking the "favorable" treatment that Congress intended for news organizations to receive under the fee-shifting provision of FOIA. Pl.'s Motion at 10; Pl.'s Reply at 10 (citing Tax Analysts, 965 F.2d at 1095-96).

Plaintiff is certainly correct that "Congress wanted news organizations to be treated favorably under the attorney's fee provision." Tax Analysts, 965 F.2d at 1096. Such favorable treatment has been deemed appropriate, however, only where the requesting party's "interest in the information . . . was journalistic" in nature. Id. (quoting Fenster, 617 F.2d at 742 n.4) (in turn quoting S. Rep. No. 854, 93d Cong., 2d Sess. 19 (1974)). Indeed, the D.C. Circuit has explicitly stated that there is nothing "that suggests that a litigant's status as a news organization renders an award of attorney's fees automatic, or that such a status renders irrelevant the news organization's other interests in the information." Id. Congress, the court of appeals explained, "left to the discretion of district courts the judgment on whether to award attorney's fees even to news organizations, leaving open the possibility that in some circumstances news organizations might not be entitled to fees." Id. The district court in Tax Analysts, whose judgment the D.C. Circuit affirmed, concluded that the news organization in that case was not entitled to fees.

The circumstances of the present case are likewise ones in which the news organization's commercial and professional interests weigh against an award of attorney's fees. Herrick's describes itself as a newsletter "disseminated through a computer fax program to more than 3,000 persons in the international trade community," including "importers, exporters, customs brokers, freight forwarders and the like." Pl.'s Reply at 3-4. But, as plaintiff acknowledges throughout its motion, reply, and accompanying exhibits, that is not the whole story. The newsletter is produced by plaintiff's counsel, Peter S. Herrick, whose law firm has established a website, www.customslawyer.net, the contents of which "reflect articles [that] have appeared in the Newsletter." Pl.'s Reply at 3. On the newsletter itself, the name, addresses, telephone numbers, and website for the law firm of plaintiff's counsel (and namesake) are all prominently displayed directly below the title "Customs & International Trade Newsletter." Pl.'s Reply, Exh. A. Plaintiff further admits that one goal of the newsletter is "to direct attention to the Herrick . . . website," among other sources of potentially useful information, Pl.'s Reply at 4, and that plaintiff views the release of the SAMEPH as "a business opportunity" because it can now "offer the SAMEPH for sale to importers, exporters, customs brokers, freight forwards [sic] and similarly situated businesses to which it sends its newsletter." Pl.'s Motion at 10. A CD-ROM containing the portions of the SAMEPH released in August of 2004 is already available for a price of $100 at plaintiff's website. See http://www.customslawyer.net/handbook.htm.

These facts suffice to demonstrate the strong commercial and professional interest - - as opposed to a journalistic interest, see Tax Analysts, 965 F.2d at 1096 - - that plaintiff has in securing the disclosure of the SAMEPH. They also bring to the fore the noteworthy similarities between this case and Fenster, 617 F.2d at 743-44. In that case, the requesting attorneys

acknowledged that the concern driving their protracted pursuit of the government manual was that their law firm had been "seriously impaired in [its] counseling, negotiation, and litigation services by the unavailability of the manual." Id. at 744. The D.C. Circuit found it "evident" that the attorneys "originally brought this suit to obtain information that would help their firm counsel clients. Moreover, the firm knew that if it succeeded in obtaining the disclosure of the audit manual, that fact might well induce contractors with problems involving the DCAA to bring their business to the firm . . . ." Id. Under those circumstances, the court concluded that the lawyers' "private self-interest motive" and the possibility of "pecuniary benefit" were sufficient to ensure the vindication of their rights under FOIA. Id. (citation and quotation marks omitted). Similarly, as plaintiff's motion demonstrates, the most readily identifiable beneficiaries of the released portions of the SAMEPH have been the firm Peter Herrick's, P.A. and the firm's clients in two cases pending in federal court. See Pl.'s Motion at 8-9. The newsletter - - and the law firm that serves as its author and distributor - - thus have an undeniable "pecuniary" interest in obtaining the SAMEPH, an interest that the D.C. Circuit has held weighs against a fee award for individual lawyers and news organizations alike. See Tax Analysts, 965 F.2d at 1096; Fenster, 617 F.2d at 744.

   Plaintiff resists this logic by differentiating between the newsletter and the law firm, cloaking itself in the preferred treatment that the former should receive as a news organization. But the very arguments that plaintiff makes in order to show why the Burka rule does not control the instant case ultimately undermine its effort to disclaim a commercial and/or professional motivation for its FOIA request. Plaintiff's own description of the relationship between the newsletter and the Herrick law firm says all that needs to be said about the undeniably aligned

commercial interests of the two entities. See Pl.'s Reply at 6-7 ("Newsletter is represented by Peter S. Herrick, P.A. . . . Peter S. Herrick [is] the principal attorney at Peter S. Herrick, P.A. and in-house counsel for Newsletter, is the only attorney who entered an appearance; directed the litigation for Newsletter; and, has signed all of the pleadings as the attorney for Newsletter."). The interests of Herrick, his law firm, and his newsletter, in other words, are inextricably intertwined. And because those interests are overwhelmingly commercial and private in nature, this case is one in which an entity that qualifies as a news organization is nonetheless not entitled to an award of attorney's fees. See Tax Analysts, 965 F.2d at 1065-66 (reaffirming that even private motives that are not "strictly commercial" cut against a fee award, and that district courts retain broad discretion in determining whether news organizations are entitled to attorney's fees). Accordingly, as in Fenster, plaintiff's success in its "original goal of obtaining release of the manual . . . is compensation enough." 617 F.2d at 754; see also Tax Analysts, 965 F.2d at 1097 (reaffirming the soundness of that reasoning).

      3.  Reasonableness of the agency's withholding

The final factor in the entitlement inquiry is "whether the government's withholding of the records had a reasonable basis in law." Cuneo, 553 F.2d at 1364; Nationwide Bldg. Maintenance, Inc., 559 F.2d at 712 n.34 ("[I]f the government only establishes that it had a reasonable basis in law for resisting disclosure it may be proper to deny a FOIA plaintiff's motion for attorney fees unless other factors affirmatively justify such an award."). This factor brings into play the soundness of the agency's basis for resisting disclosure, and "is intended to weed out those cases in which the government was 'recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior.'" Tax Analysts, 965 F.2d at 1097 (quoting Cuneo, 553

F.2d at 1366). Courts should not award fees "where the agency's interpretation of its legal right to withhold information is correct as a matter of law." Piper v. U.S. Dep't of Justice, 339 F. Supp. 13, 22 (D.D.C. 2004) (citing Cotton, 63 F.3d at 1117); see also Chesapeake Bay Found., Inc. v. U.S. Dep't of Agric., 11 F.3d 211, 216 (D.C. Cir. 1993) ("[T]here can be no doubt that a party is not entitled to fees if the Government's legal basis for withholding requested records is correct."). But the D.C. Circuit has also emphasized that the government's position need not be correct to qualify as reasonable. See Fenster, 617 F.2d at 744 (citing Cuneo, 553 F.2d at 1365-66); see also Piper, 339 F. Supp. 2d at 22 ("Where the agency erroneously interprets the law, its withholdings will be considered reasonable if the interpretation has a colorable basis in law."). Indeed, the court of appeals has upheld the government's basis for resisting disclosure as reasonable even where the government's legal arguments had been rejected by a three-judge panel of that court and eight justices of the Supreme Court. See Tax Analysts, 965 F.2d at 1097.

Under these guiding principles, Customs' refusal to disclose portions of the SAMEPH was eminently reasonable. To conclude otherwise, the Court would have to ignore that it agreed almost entirely with the merits of Customs' arguments as to Exemptions 2, 7(E) and 7(F) of FOIA. See Herrick's II, 2006 WL 1826185, at *4-*9. And this was not the full extent of the Court's approval of Customs' efforts in this litigation. Even when granting summary judgment in plaintiff's favor in a "limited regard," the Court reaffirmed its impression that Customs had proceeded with care and acted in good faith:

> The SAMEPH is a dense and lengthy document. The Court is confident that, based on the declaration submitted, the Vaughn index, and the hand-annotated version of the SAMEPH it has now reviewed, Customs undertook a line-by-line, good-faith effort to excise and disclose all non-exempt portions of the SAMEPH in response to the Court's earlier directive. However, some mistakes were made.

> Although the mistakes are relatively few in number and not necessarily responsive to plaintiff's objectives, they do concern the type of material that FOIA seeks to make public - - specifically, references and citations to statutory authority, as well as non-analytical synopses of what the law requires . . . . This information appears to have been lumped in with exempt material and similarly designated as protected.

Id. at *10.  Plaintiff has provided no grounds, and the Court sees none, for the Court to retreat from its prior evaluation at this stage of the proceedings.  Hence, the Court finds that Customs' decision to withhold portions of the SAMEPH had more than a colorable basis in the law and was therefore reasonable.  See Cotton, 63 F.3d at 1121.

In advocating the opposite conclusion, Herrick's hangs its hat on the often cited policy concern underlying the fourth factor - - that the government should pay reasonable attorney's fees where it "was 'recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior.'"  Pl.'s Motion at 10 (quoting Tax Analysts, 965 F.2d at 1065) (citation omitted).  This argument is unavailing for a number of reasons.  For one thing, Herrick's focuses not on the soundness of the legal position advanced by Customs, but instead on the latter's frequent requests for extensions of time during the course of the litigation.  If Customs had engaged in dilatory tactics simply to avoid a disclosure obligation, then its conduct might well qualify as "recalcitrant" or "obdurate" and hence unreasonable.  But there is no evidence that the requests to extend looming deadlines, which are (unfortunately) a routine occurrence on the Court's docket, were sought for any reason other than to permit Customs to put forward its strongest arguments, ones that the Court found to be largely meritorious.  In other words, this is not a case in which the government stubbornly refused to accede to a valid claim.  Cf. Horsehead Indus., 999 F. Supp. at 66 (denying a request for attorney's fees in part because the agency's "narrow

18

construction of one request does not evidence a stubborn resistance to the dictates of the FOIA").

Moreover, the very case cited by Herrick's instructs that a good-faith belief that opposing a potentially valid claim is in the government's overall interest supports a finding of reasonableness. See Tax Analysts, 965 F.2d at 1067. The government opposed the news organization's FOIA request in Tax Analysts "not out of obduracy," but out of genuine concern that granting the request would place a substantial and costly administrative burden on the Justice Department. See id. If litigating a FOIA request all the way to the Supreme Court because of potential administrative burdens is reasonable, it follows a fortiori that a careful (and ultimately judicially approved) decision to withhold internal agency documents on the basis of statutory exemptions is likewise reasonable. Indeed, the sharp criticism leveled at Customs by Herrick's threatens to overshadow an aspect of this case that should not be forgotten - - a significant portion of the material withheld by Customs implicated sensitive law enforcement procedures and operations, and disclosure of this material could "be expected to endanger the life or physical safety of both Customs officials and innocent bystanders." Herrick's II, 2006 WL 1826185, at *5, *9. The additional time that Customs requested in order to strike the proper balance between these important interests in law enforcement and public safety and FOIA's goal of open government does not transform Customs into a recalcitrant government litigant that needs to be deterred through an award of fees. Because Customs advanced a reasonable and largely correct legal position and did not exhibit the kind of stubborn opposition to valid claims that FOIA seeks to discourage, the Court concludes that the fourth factor in the entitlement analysis also weighs strongly against an award of attorney's fees.

**CONCLUSION**

In the final analysis, the Court agrees with Herrick's as to one thing: "This is not a close case." Pl.'s Motion at 10. It is likely true, as Herrick's continually emphasizes, that this lawsuit was what prompted Customs to release substantial portions of the SAMEPH in August of 2004. But it is equally true (and just as significant) that the ensuing two years of litigation have only yielded approximately thirty sentences of judicially-mandated disclosures, plus whatever limited information Customs may have released (inadvertently or voluntarily) in complying with the Court's ruling in Herrick's I. And after Buckhannon and OCAW, the focus may more appropriately be solely on the relief ordered by the Court. Given this modest amount of court-ordered relief, the minimal public benefit conferred by the released information, plaintiff's overriding commercial and professional interest in the materials, and Customs' reasonable and largely correct legal position,[4] the Court concludes that an award of attorney's fees is inappropriate in this case. A separate order has been posted herewith.

                                              /s/ John D. Bates
                                              JOHN D. BATES
                                           United States District Judge

Dated: October 26, 2006

---

[4] The Court is particularly mindful of the D.C. Circuit's statement that once the government has established "a reasonable basis in law for resisting disclosure," courts may properly deny "a FOIA plaintiff's motion for attorney fees unless other factors affirmatively justify such an award." Nationwide Bldg. Maintenance, Inc., 559 F.2d at 712 n.34 (emphasis added). As the foregoing discussion makes clear, the government's basis for resisting disclosure was reasonable, and none of the other factors, either alone or in conjunction, affirmatively justifies a fee award.